```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Ronald Bloodworth,              :

              Plaintiff,        :    Case No. 2:10-cv-926

     v.                         :    Judge Holschuh

Debora A. Timmerman-Cooper,     :    Magistrate Judge Kemp
et al.,
              Defendants.       :
```

REPORT AND RECOMMENDATION

    This prisoner civil rights case is before the Court pursuant to the requirement, contained in 28 U.S.C. §§1915(e)(2) and 1915A(a), that the complaint in such cases be reviewed as soon as practicable after docketing to determine if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted.  For the following reasons, it will be recommended that this case be dismissed.

I.

    These facts are taken from the complaint.  Mr. Bloodworth is an inmate at the London Correctional Institution.  In this case, one of several he has filed, he sued the Warden, Ms. Timmerman-Cooper, as well as a number of unit managers and corrections officers who are employed at London.  All of his claims relate to some institutional misconduct charges filed against him.

    As more fully discussed below, the precise details of these misconduct charges and the proceedings which led to Mr. Bloodworth's convictions on those charges are not the most important part of this case.  To summarize Mr. Bloodworth's allegations, he received conduct reports on July 28, 2010 (for possessing contraband), on August 18, 2010 (for disrespect and disobedience of a direct order), and August 31, 2010 (for

physical resistance to and disobedience of a direct order).  In each instance, he was given a hearing before a Rules Infraction Board panel.  He claims that his due process rights were violated with respect to each one of these proceedings.  Although his exact due process claim differs for each of them, he states that the RIB refused to view available video evidence that might have shown he was not guilty, that he was either denied witnesses or denied an opportunity to ask them questions, and that the RIB made at least one of its decisions without adequate evidence to support it.

The first two convictions resulted in a thirty-day commissary restriction and a fifteen-day placement in disciplinary control.  After the third conviction, the RIB imposed another fifteen-day sentence in disciplinary control, and it recommended that Mr. Bloodworth be placed in Local Control after he was released from disciplinary control.  The Local Control Committee subsequently determined that Mr. Bloodworth would, if released to the general population, "seriously disrupt the orderly operation of the institution," and he was placed in Local Control.  The Director of the Ohio Department of Rehabilitation and Correction, Ernie Moore, upheld that decision after Mr. Bloodworth appealed it.

The complaint sets forth ten separate counts, all of which allege the denial of procedural due process.  As relief, Mr. Bloodworth asks for the reversal of his disciplinary charges, the expungement of his institutional record, and a hearing at which prison officials would have to explain why they denied Mr. Bloodworth the chance to produce video evidence and question witnesses at his three RIB hearings.  The question presented is whether all of the facts alleged by Mr. Bloodworth, even if true, would support a finding that his constitutional rights were violated.

II.

For a number of years, the Due Process Clause played an active role in the courts' ability to scrutinize the results of prison disciplinary hearings. Beginning with the Supreme Court's decision in <u>Wolff v. McDonnell</u>, 418 U.S 539 (1974), which held that the State of Nebraska had created a constitutionally-protected liberty interest in "good time credits" and that it could not take those away from an inmate without following minimum requirements relating to notice, an opportunity to be heard, and a decision based on "some evidence," the federal courts required such procedures to be applied to a variety of prison disciplinary proceedings. That procedure became more refined, and more broadly applicable, when the Supreme Court determined that any time a prison regulation used mandatory language (such as the word "shall") to describe a process by which an inmate would be disciplined if he or she committed some particular institutional offense, the state had created a "liberty interest" not to be disciplined unless the basis of such discipline were proved at a hearing to which the Due Process Clause applied. See <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983).

After that time, the case law is replete with decisions dealing with the issue of whether an inmate who received discipline such as transfer to segregation, even for short period of time, had received all the process which was constitutionally due. See, e.g., <u>Hensley v. Wilson</u>, 850 F.2d 269 (6th Cir. 1988); <u>Franklin v. Aycock</u>, 795 F.2d 1253 (6th Cir. 1986). Under this line of cases, Mr. Bloodworth would have had at least a viable argument that the types of procedures which resulted in his loss of privileges or transfer to disciplinary segregation, and about which he complains, violated the Due Process Clause.

All that changed in 1995 when the Supreme Court decided <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). In <u>Sandin</u>, the Court was

asked to re-examine the fundamental premise of Wolff and Hewitt, which was that most prison disciplinary proceedings implicated some liberty interest of the inmate being disciplined, especially if the prison regulation at issue was phrased in mandatory terms. Finding that the focus on the language of such regulations "strayed from the real concerns undergirding the liberty protected by the Due Process Clause," the Supreme Court held that the only type of consequence which triggered a due process analysis was one which could be described as an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In other words, unless, as a result of a prison disciplinary proceeding, an inmate suffered some particularly unusual or serious punishment, the Due Process Clause simply did not apply to the proceeding, because the inmate would not have suffered from any loss of the type of liberty protected by that constitutional provision. Examples of such unusual or severe consequences (again, measured against what types of things a prisoner might reasonably expect to go along with being in prison to begin with) would be the involuntary commission to a mental hospital, or the involuntary administration of psychotropic drugs. See generally Bazzetta v. McGinnis, 430 F.3d 795, 804 (6th Cir. 2005). Consequences such as the transfer to another prison (even a maximum security facility) or the loss of visitation privileges, however, do not fall within this category. See id.

    The first disciplinary proceeding which Mr. Bloodworth describes in his complaint resulted in a thirty-day suspension of his commissary privileges. That type of deprivation clearly is not something which is unusual or atypical for an inmate to experience, and it is not an actionable loss of a constitutionally-protected liberty interest. This Court has reached that exact conclusion in the past. See Tate v. Williams,

2007 WL 120109 (S.D. Ohio January 10, 2007), adopted and affirmed 2007 WL 781657 (S.D. Ohio March 12, 2007). The same holds true for the short sentences of disciplinary confinement which he received. See Sandin, supra, holding that a thirty-day placement in disciplinary segregation was not an atypical hardship; see also Sarmiento v. Hemingway, 93 Fed. Appx. 65, 66 (6th Cir. March 15, 2004).

Although it is not entirely clear from the complaint, Mr. Bloodworth may also be asserting that the decision of the Local Control Committee to place him in local control rather than to return him to the general prison population was made in violation of his due process rights. However, in Jones v. Baker, 155 F.3d 810 (6th Cir. 1998), the Court of Appeals held that even a two-and-one-half year stay in administrative segregation was not a constitutionally-significant loss of liberty, noting that administrative segregation is not the type of hardship "implicating a protected liberty interest" and this holds true even if the inmate has been in such segregation for an "extraordinarily long time ...." Id. at 812, citing Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir. 1995). Consequently, even if the Local Control Committee decision is also at issue here, the Court may not apply the constraints of the Due Process Clause to that decision.

### III.

In short, regardless of whether, as Mr. Bloodworth alleges, he was denied evidence or witnesses as part of the three disciplinary proceedings he describes in his complaint, or whether the prison Rules Infraction Board made a decision which was not supported by the evidence it had before it, his due process rights were not implicated because he was punished in a way that is a normal and customary part of prison life, and not an "atypical hardship," which is what Sandin v. Conner requires

for a due process claim to be made out.  Consequently, Mr. Bloodworth's complaint fails as a matter of law, and this Court should dismiss it under 28 U.S.C. §1915(e)(2) and 1915A for failure to state a claim upon which relief can be granted.  If the Court adopts this recommendation, a copy of the complaint, this Report and Recommendation, and any dismissal order should be mailed to all of the defendants.

IV.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge

-6-